# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BANCO DE LA REPUBLICA DE COLOMBIA, | |
| *Plaintiff,* | |
| v. | 10 Civ. 0536 (AKH) (HP) |
| THE BANK OF NEW YORK MELLON, BNY MELLON, N.A., and BNY MELLON ASSET SERVICING, B.V., | ECF Case |
| *Defendants.* | |

## DEFENDANT BNY MELLON ASSET SERVICING, B.V.'s MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION

Jonathan D. Schiller
JSchiller@BSFLLP.com
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel.: 212-446-2300
Fax: 212-446-2350

Robin A. Henry
RHenry@BSFLLP.com
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Tel.: 914-749-8200
Fax: 914-749-8300

Carlos M. Sires
CSires@BSFLLP.com
Carl E. Goldfarb
CGoldfarb@BSFLLP.com
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Tel.: 954-356-0011
Fax: 954-356-0022

*Attorneys for Defendants The Bank of New York Mellon, BNY Mellon, N.A., and BNY Mellon Asset Servicing, B.V.*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................1

ARGUMENT ...................................................................................................................4

I.   BNYMAS WAS PREJUDICED BY THE *SUA SPONTE* ENTRY OF SUMMARY
     JUDGMENT AGAINST IT ON A BREACH OF FIDUCIARY DUTY CLAIM
     THAT BANCO DID NOT PLEAD................................................................................4

     A.   District Courts May Enter *Sua Sponte* Summary Judgment Only If The Party
          Against Whom Judgment Is To Be Entered Is First Afforded A Full And Fair
          Opportunity To Present Evidence And Make Arguments Opposing Summary
          Judgment ..............................................................................................................4

     B.   BNYMAS Reasonably Believed That The Breach Of Fiduciary Duty Claim
          Was Not Part Of The Litigation And Thus Did Not Conduct Discovery On
          That Claim Or Address It At The Summary Judgment Stage ...............................8

II.  BNYMAS WAS PREJUDICED BECAUSE IT WAS NOT AFFORDED THE
     PROTECTIONS REQUIRED UNDER RULE 56(f) AND THE COURT FAILED
     TO DETERMINE THAT THE OUTCOME WOULD NOT HAVE BEEN
     DIFFERENT IF IT HAD BEEN................................................................................12

     A.   If BNYMAS Had Been Afforded The Required Notice And Opportunity To
          Defend Itself On The Duty Element, The Outcome Of The Analysis Would
          Have Been Different ..........................................................................................13

     B.   On The Breach Element, There Are Genuine Issues Material Fact Precluding
          Summary Judgment In Banco's Favor................................................................18

          1.   BNYMAS Adduced Evidence Showing That It Disclosed Sigma's
               Funding Difficulties ...................................................................................19

          2.   BNYMAS Adduced Evidence Showing That Sigma's Financial
               Difficulties Were Otherwise Widely Publicized And Known To Banco ..22

     C.   On The Reliance/Causation Element, There Are Genuine Issues Of Material
          Fact Precluding Summary Judgment In Banco's Favor .......................................24

CONCLUSION...............................................................................................................26

# TABLE OF AUTHORITIES

Page

**Cases**

*Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Pub. Co.*,
  580 F. Supp. 2d 285 (S.D.N.Y. 2008) ................................................................. 16

*Ashland Inc. v. Morgan Stanley & Co., Inc.*,
  652 F.3d 333 (2d Cir. 2011) ............................................................................... 26

*Balta v. Ayco., LP*,
  626 F. Supp. 2d 347 (W.D.N.Y. 2009) ............................................................... 16

*Barnes v. Printron, Inc.*,
  No. 93 Civ. 5085, 1998 WL 778378 (S.D.N.Y. Nov. 5, 1998) ........................... 14

*Bissell v. Merrill Lynch & Co.*,
  937 F. Supp. 237 (S.D.N.Y. 1996) ..................................................................... 15

*BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*,
  866 F. Supp. 2d 257 (S.D.N.Y. 2012) .......................................................... 13, 14

*Brock Equities Ltd. v. Josephthal, Lyon & Ross, Inc.*,
  No. 92 Civ. 8588, 1995 WL 380097 (S.D.N.Y. June 27, 1995) ......................... 14

*Broich v. Incorporated Village of Southhampton*,
  462 F. App'x 39 (2d Cir. 2011) ......................................................................... 2, 6

*Brooks v. Key Trust Co. Nat. Ass'n*,
  809 N.Y.S.2d 270 (N.Y. App. Div. 2006) .......................................................... 17

*Carr v. Neilson*,
  909 N.Y.S.2d 387 (N.Y. App. Div. 2010) .......................................................... 26

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
  952 N.E.2d 995 (N.Y. 2011) ............................................................................... 25

*Coach Leatherware Co. v. AnnTaylor, Inc.*,
  933 F.2d 162 (2d Cir. 1991) ............................................................................... 13

*Costello v. Grundon*,
  651 F.3d 614 (7th Cir. 2011) ............................................................................. 11

*EBC I, Inc. v. Goldman, Sachs & Co.*,
  5 N.Y.3d 11 (N.Y. 2005) ..................................................................................... 17

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
  837 F. Supp. 2d 162 (S.D.N.Y. 2011) .......................................................... 16, 18

*Gordon & Co. v. Ross*,
    84 F.3d 542 (2d. Cir. 1996)......................................................................................... 25

*Henneberry v. Sumitomo Corp. of Am.*,
    415 F. Supp. 2d 423 (S.D.N.Y. 2006)........................................................................ 12

*Herzog v. Straus*,
    553 F.2d 789 (2d Cir. 1977)......................................................................................... 5

*HS Resources, Inc. v. Wingate*,
    327 F.3d 432 (5th Cir. 2003) ....................................................................................... 7

*Ideal Steel Supply Corp. v. Anza*,
    652 F.3d 310 (2d Cir. 2011)....................................................................................... 25

*In re Refco Securities Lit.*,
    759 F. Supp. 2d 301 (S.D.N.Y. 2010)....................................................................... 15

*Indep. Order of Forresters v. Donald, Lufkin, Jenrette, Inc.*,
    157 F.3d 933 (2d Cir. 1998)....................................................................................... 15

*Jett v. Dallas Independent School District*,
    491 U.S. 701 (1989).................................................................................................... 25

*King Cnty., Wash. v. IKB Deutsche Industriebank AG*,
    863 F. Supp. 2d 313 (S.D.N.Y. 2012)....................................................................... 12

*Littman v. Magee*,
    860 N.Y.S.2d 24 (N.Y. App. Div. 2008) .................................................................. 25

*Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
    261 F.R.D. 13 (S.D.N.Y. 2009) ................................................................................ 12

*Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    89 F. App'x 287 (2d Cir. 2004).................................................................................. 25

*Pourghoraishi v. Flying J, Inc.*,
    449 F.3d 751 (7th Cir. 2006) ..................................................................................... 11

*Priestley v. Headminder, Inc.*,
    647 F.3d 497 (2d Cir. 2011)................................................................................. 2, 5, 6

*Pugh v. Goord*,
    345 F.3d 121 (2d Cir. 2003)......................................................................................... 6

*Ramsey v. Coughlin*,
    94 F.3d 71 (2d Cir. 1996).................................................................................. *passim*

*Richards v. Connecticut Dep't of Corr.*,
  349 F. Supp. 2d 278 (D. Conn. 2004)..................................................................... 7

*Schwan-Stabilo Cosmetics GMBH & Co. v. Pacificlink Int'l Corp.*,
  401 F.3d 28 (2d Cir. 2005)............................................................................... 5, 6

*Scott v. Dime Sav. Bank of N.Y., FSB,*,
  866 F. Supp. 1073 (S.D.N.Y. 1995)..................................................................... 14

*Shrader v. CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995)................................................................................. 4

*Simpson v. Merchants Recovery Bureau, Inc.*,
  171 F.3d 546 (7th Cir. 1999) ............................................................................. 7

*State Farm Mut. Auto. Ins. v. Mallela*,
  2002 WL 319467622002 (E.D.N.Y. Nov. 21, 2002).............................................. 8

*Terry v. Ashcroft*,
  336 F.3d 128 (2d Cir. 2003) ............................................................................. 18

*Titran v. Ackman*,
  893 F.2d 145 (7th Cir. 1990) ....................................................................... 7, 11

*United States v. JB Williams Co., Inc.*,
  498 F. 2d 414 (2d Cir. 1974)............................................................................ 19

*United States v. Uccio*,
  940 F.2d 753 (2d Cir. 1991)............................................................................... 8

## Rules

Fed. R. Civ. P. 56...................................................................................... *passim*

Fed. R. Civ. P. 56(f) ................................................................................. *passim*

Local Rule 6.3 ................................................................................... 1, 4, 26

## Treatises

Moore's Fed. Prac., § 56.71[4] ........................................................................ 11

## INTRODUCTION

When the parties filed their summary judgment papers, the operative complaint—the Third Amended Complaint filed by Banco de la Republica de Colombia ("Banco")—did not include a claim for breach of fiduciary duty.  In fact, after this Court dismissed Banco's breach of fiduciary duty claim in its Amended Complaint, and then dismissed *with prejudice* Banco's breach of fiduciary duty claim in its Second Amended Complaint, Banco abandoned its breach of fiduciary duty claim and made no effort to re-plead or otherwise pursue it during the course of the litigation.  Consequently, BNY Mellon Asset Servicing, B.V. ("BNYMAS") did not conduct discovery on breach of fiduciary duty, including the core and highly fact-intensive questions of whether any such duty existed and, if so, what was its scope.  And, because Banco's summary judgment motion did not include a breach of fiduciary duty claim, BNYMAS did not present evidence or make argument in its opposition papers regarding such a claim.

Nonetheless, this Court entered summary judgment in favor of Banco on a breach of fiduciary duty claim that was neither pled nor litigated.  This Court first found that BNYMAS owed a fiduciary duty to Banco—including in the spring of 2008, after Banco revoked BNYMAS' discretion to make investment decisions on Banco's behalf—even though Banco never alleged the existence of such a duty and the parties did not address that issue in the summary judgment briefing or argument.  Then, the Court found that BNYMAS breached that duty by failing to disclose to Banco information regarding Sigma's financial condition.

Because BNYMAS had no notice that summary judgment might be entered against it on a breach of fiduciary duty claim and was prejudiced as a result, this Court should reconsider its ruling under Local Rule 6.3 and then vacate the grant of summary judgment in Banco's favor on the unpled breach of fiduciary duty claim.  We respectfully submit that this Court has overlooked the following matters:

*First*, this Court overlooked the law governing *sua sponte* summary judgment rulings. Although a district court is authorized to enter summary judgment *sua sponte*, it may do so *only* if the non-moving party is afforded a full and fair opportunity to discover relevant evidence, present the evidence and make its arguments showing why summary judgment is not warranted. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011); *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996); Fed. R. Civ. P. 56(f).  While the Second Circuit has acknowledged that district courts may enter summary judgment absent a motion by the party on whose behalf judgment is entered, it has "firmly discouraged th[e] practice," *Broich v. Incorporated Village of Southhampton*, 462 F. App'x 39, 41 (2d Cir. 2011), and instructed that a *sua sponte* summary judgment will be vacated absent a determination that the non-movant was not prejudiced by the lack of notice—that is, that "following the procedures set forth in Rule 56 would not [have] alter[ed] the outcome," *Ramsey*, 94 F.3d at 74.

Here, the prejudice to BNYMAS is all the greater because it not only had no notice that summary judgment might be entered against it on a breach of fiduciary duty claim, but it had no knowledge that such a claim existed because the claim had been dismissed and abandoned. Banco did not ask for summary judgment on a breach of fiduciary duty claim, oral argument on the parties' summary judgment motions did not touch on a breach of fiduciary duty claim, and this Court provided no advance warning that it was inclined to even consider the claim, much less enter judgment against BNYMAS on a breach of fiduciary duty theory.  In fact, in light of the two dismissals of the breach of fiduciary duty claim before discovery began—the second one with prejudice—BNYMAS had every reason to believe that a breach of fiduciary claim was not part of this case and had no reason to believe that it needed to address this claim in discovery or

in its briefing and presentation of the evidence in its summary judgment papers.  Consequently, BNYMAS was not afforded Rule 56(f)'s procedural protections and was prejudiced as a result.

*Second*, the outcome would have been different if BNYMAS had been afforded the opportunity to demonstrate that there are genuine issues of material fact precluding judgment in Banco's favor on a breach of fiduciary duty claim.  To be sure, some of the facts and circumstances relevant to a breach of fiduciary duty claim were the subject of the parties' briefing on Banco's fraud-based claims, but the elements of a breach of fiduciary duty claim are different and BNYMAS had no opportunity to conduct discovery and then present evidence and arguments at the summary judgment stage specifically relating to the elements of a fiduciary duty claim on which Banco bore the burden of proof.  Because a breach of fiduciary duty claim is not the same as a fraud or negligent misrepresentation claim, BNYMAS' briefing on the fraud-based claims was no substitute for an opportunity to brief the facts and law relevant to a breach of fiduciary duty claim.

This Court found that BNYMAS owed Banco a fiduciary duty.  But the fiduciary duty inquiry is a fact-intensive one.  BNYMAS had no opportunity to conduct discovery or present evidence and argument on Banco's expectations regarding the scope of BNYMAS' duties to Banco apart from the parties' contractual agreement (especially in the spring of 2008 after Banco revoked BNYMAS' investment discretion under the SLA)—the key duty questions—before this Court entered summary judgment against it.  On the other elements of a fiduciary duty claim—breach and causation—an examination of the record shows that fact issues abound, but this Court overlooked the evidence creating a genuine issue of material fact.  And had the breach of fiduciary duty claim not been dismissed with prejudice earlier and had the claim been part of the summary judgment equation, BNYMAS would have conducted discovery and presented

evidence and arguments specifically targeting such a claim and the outcome would have been different.

BNYMAS recognizes that the bar for reconsideration is a high one, and that a party may not use a reconsideration motion to relitigate issues already decided against it or to present an entirely new argument. *See* Local Rule 6.3; *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995). BNYMAS' motion meets the Rule's rigorous standard. It is not asking this Court to relitigate issues that already have been decided, but rather is asking for the opportunity to litigate issues related to a breach of fiduciary duty claim in the first instance, assuming (which BNYMAS does not concede) that it is proper to resurrect the breach of fiduciary duty claim at this late date. Rule 56(f) of the Federal Rules of Civil Procedure establishes safeguards when a district court's *sua sponte* summary judgment is involved—safeguards that avoid prejudice by requiring that parties be given notice and an opportunity to fully brief the relevant facts and law before judgment is entered against them. Those safeguards were not followed here, and BNYMAS has been severely prejudiced by this Court's *sua sponte* summary judgment ruling. For all these reasons, this Court should vacate the portion of its July 26, 2013 Order entering summary judgment in favor of Banco and against BNYMAS on a breach of fiduciary duty claim.

## **ARGUMENT**

I. **BNYMAS WAS PREJUDICED BY THE *SUA SPONTE* ENTRY OF SUMMARY JUDGMENT AGAINST IT ON A BREACH OF FIDUCIARY DUTY CLAIM THAT BANCO DID NOT PLEAD**

    A. **District Courts May Enter *Sua Sponte* Summary Judgment Only If The Party Against Whom Judgment Is To Be Entered Is First Afforded A Full And Fair Opportunity To Present Evidence And Make Arguments Opposing Summary Judgment**

Rule 56's procedures governing summary judgment are designed to provide the non-moving party with notice of the possibility that judgment might be entered against it and an

opportunity to fully defend against the entry of judgment.  The Rule affords protections when a district court's *sua sponte* summary judgment is involved—providing that a court may grant summary judgment independent of a motion or "grant the motion on grounds not raised by a party" only "[a]fter giving notice and a reasonable time to respond."  Fed. R. Civ. P. 56(f); *see also Priestley*, 647 F.3d at 504 ("It is … well established that before a district court may properly grant a motion for summary judgment [*sua sponte*], certain procedural protections must first be afforded to the non-moving party.").

While Rule 56 does not authorize the district court to grant summary judgment *sua sponte* without notice, the Second Circuit has recognized that district courts have discretion to do so at least for pled claims "in certain circumstances," *Schwan-Stabilo Cosmetics GMBH & Co. v. Pacificlink Int'l Corp.*, 401 F.3d 28, 33 (2d Cir. 2005).  However, in order to exercise this discretion, "the district court must assure itself that following the procedures set out in Rule 56 would not alter the outcome."  *Ramsey*, 94 F.3d at 74.  Summary judgment should not be granted *sua sponte* "unless the losing party has been given an opportunity to demonstrate that there are genuine material issues for trial."  *Ramsey,* 94 F.3d at 74 (reversing grant of summary judgment *sua sponte* where Rule 56 procedures were not followed); *see also Herzog v. Straus*, 553 F.2d 789, 792 (2d Cir. 1977) (such an opportunity is vital if the court is to make an informed decision whether to grant summary judgment).

The Second Circuit has cautioned that summary judgment should not be entered *sua sponte* unless "the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried.…" *Priestley*, 647 F.3d at 504.  This means that it must be "clear that further discovery would be of no benefit" and "the record must … reflect the losing party's inability to enhance the evidence

supporting its position and the winning party's entitlement to judgment." *Ramsey*, 94 F.3d at 74. The Second Circuit has held that while courts may grant summary judgment *sua sponte* and without notice, doing so is sharply disfavored. *See Broich*, 462 F. App'x at 41 (noting that "while district courts may in some circumstances grant summary judgment *sua sponte* without notice, we have firmly discouraged [that] the practice" and reversing district court's *sua sponte* grant of summary judgment on claim not raised by the parties' summary judgment papers).[1]

Underscoring the importance of the need to afford procedural protections and avoid prejudice to the non-moving party, the Second Circuit and other federal circuits have not hesitated to reverse or vacate a district court's *sua sponte* summary judgment order where the party against whom judgment was entered was not provided notice and an opportunity to present its case against summary judgment, either because the issue or claim decided was not raised by the parties on summary judgment or the court granted summary judgment in a favor of party that had not moved for summary judgment. *See, e.g.*, *Priestley*, 647 F.3d at 504 (reversing grant of summary judgment *sua sponte* against party that had neither notice nor opportunity to demonstrate that genuine issues of material fact existed and noting that district court "not only ignored the fact that Priestley did not move for summary judgment against Headminder, but it also failed to give Headminder notice that it was considering entering summary judgment against it"); *Schwan-Stabilo*, 401 F.3d at 33 (reversing grant of summary judgment in favor of plaintiff on damages, where parties had sought summary judgment on liability only and defendant was not afforded the opportunity to address damages issue); *Pugh v. Goord*, 345 F.3d 121, 124-25 (2d Cir. 2003) (vacating *sua sponte* summary judgment where neither party moved for summary

---

[1] Unless otherwise noted, all emphasis is added and all internal citations and quotation marks are omitted.

judgment and noting that "district courts have the power to enter summary judgment *sua sponte* only if the losing party was on notice that [it] had to come forward with all of [its] evidence"); *HS Resources, Inc. v. Wingate*, 327 F.3d 432, 440-441 (5th Cir. 2003) (vacating summary judgment *sua sponte* on issue that parties did not seek to resolve and did not brief in summary judgment papers and that was merely mentioned in passing at hearing); *Simpson v. Merchants Recovery Bureau, Inc.*, 171 F.3d 546, 549-51 (7th Cir. 1999) (vacating summary judgment *sua sponte* where party never had a meaningful opportunity to come forward with all evidence); *Titran v. Ackman*, 893 F.2d 145, 148 (7th Cir. 1990) (reversing summary judgment on claim outside the scope of questions presented by the parties' summary judgment papers and explaining importance of notice in that "[w]hen a party moves for summary judgment on ground A, the opposing party need not address grounds B, C, and so on; the number of potential grounds for (and arguments against) summary judgment may be large, and litigation is costly enough without requiring parties to respond to issues that have not been raised on pain of forfeiting their position").  The prejudice is even greater where the *sua sponte* summary judgment order is on a claim that is not pled.  *See Richards v. Connecticut Dep't of Corr.*, 349 F. Supp.2d 278, 291 (D. Conn. 2004) (finding prejudice and refusing to consider un-pled claim at summary judgment where the failure to plead a claim had "deprived defendants of the notice necessary to permit them to conduct discovery and prepare a defense").

Here, *sua sponte* summary judgment was entered against BNYMAS on a breach of fiduciary duty claim without notice to BNYMAS that such ruling was possible and without giving BNYMAS the opportunity to present evidence and arguments opposing summary judgment on that claim.  As explained, Banco did not assert a claim for breach of fiduciary duty in its Third Amended Complaint—nor did the Complaint otherwise allege the existence of a

fiduciary relationship or relationship of trust with BNYMAS (let alone one apart from the contractual relationship) between Banco and BNYMAS.   Indeed, because Banco's breach of fiduciary duty claim was dismissed with prejudice by this Court and then abandoned by Banco before discovery began, this case was litigated without a claim for breach of fiduciary duty, any allegation regarding the existence of a fiduciary duty, or any claim that included fiduciary duty as an element.   Consequently, BNYMAS had no reason to believe that it needed to conduct discovery on a breach of fiduciary duty claim—much less address the claim in its summary judgment opposition.[2]   In this case, there is no indication that the Court complied with the obligation to "assure itself that following the procedures set out in Rule 56 would not alter the outcome," *Ramsey*, 94 F.3d at 74.   As explained below, BNYMAS was prejudiced and notice would have altered the outcome.

### B. BNYMAS Reasonably Believed That The Breach Of Fiduciary Duty Claim Was Not Part Of The Litigation And Thus Did Not Conduct Discovery On That Claim Or Address It At The Summary Judgment Stage

In its Amended Complaint, Banco asserted a breach of fiduciary duty claim alleging, among other things, that BNYMAS failed to disclose risks and information associated with the

---

[2]   BNYMAS' reliance on this Court's dismissal of Banco's breach of fiduciary duty claim to conclude that such a claim was no longer part of the case was particularly reasonable in light of the law of the case doctrine—especially because Banco never sought to challenge that ruling. *See, e.g., State Farm Mut. Auto. Ins. v. Mallela*, 2002 WL 31946762, at *8 (E.D.N.Y. Nov. 21, 2002) ("The doctrine of the law of the case states that, when a court has ruled on an issue, that decision should generally be adhered to in a court in subsequent stages of the same case.") (quoting *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991)).   Indeed, the Court's dismissal of Banco's breach of fiduciary duty claim on March 16, 2010 was the law of the case on the issue of whether Banco could bring a breach of fiduciary duty claim arising from an alleged failure to disclose risks and information associated with the Sigma investment.   (*See* D.E. 1 (Notice of Removal) at Ex. A (FAC), ¶¶ 48, 49, 87, 88.)   While the law of the case doctrine would not necessarily prohibit this Court from reinstating a breach of fiduciary duty claim, it does show that BNYMAS' belief that no such claim was in the case was reasonable and justifies BNYMAS' decision not to conduct discovery on that dismissed (and abandoned) breach of fiduciary duty claim.

investment of $20 million in cash collateral in medium term notes issued by Sigma Finance, Inc. ("the Sigma Investment").  (D.E. 1 (Notice of Removal) at Ex. A (Compl. and FAC).)  This Court granted BNYMAS' motion to dismiss Banco's breach of fiduciary duty claim as duplicative of its breach of contract claim, and granted leave to amend.  (Mot. to Dismiss Hr'g Tr. 7:15-25, Mar. 16, 2010; *id.* at 13:12 (Court: "You have one good cause of action"); *see also* D.E. 7 (Order Granting Defs.' Mot. to Dismiss, Mar. 16, 2010).)

Then, in its Second Amended Complaint, Banco attempted to revive its breach of fiduciary duty claim, this time alleging that BNYMAS breached its fiduciary duty by issuing false and misleading compliance statements that the securities loan program complied with the guidelines in the parties' Securities Loan Agreement ("SLA"), when BNYMAS knew or should have known that the Sigma Investment did not comply.  (D.E. 9 at ¶¶ 91-98.)  BNYMAS again moved to dismiss the breach of fiduciary duty claim, and Banco withdrew the claim with prejudice.  (D.E. 19 at 1 ("Plaintiff withdrew with prejudice its second cause of action, which alleges that Defendant BNY Mellon, N.A. breached a fiduciary duty owed to Plaintiff.").)  In the Third Amended Complaint, Banco made no further effort to assert a breach of fiduciary duty claim against BNYMAS.  (*See* D.E. 21.)

Given this history, BNYMAS reasonably believed that the Court's dismissal orders (along with Banco's voluntary dismissal and abandonment of breach of fiduciary duty) had put any breach of fiduciary duty claim to rest.  Accordingly, BNYMAS did not engage in fact discovery relating to a breach of fiduciary duty claim, did not address the facts and law relevant to a breach of fiduciary duty in its summary judgment papers, and did not address a breach of fiduciary duty during the March 12, 2013 summary judgment argument.  (*See e.g.* D.E. 57-60, 62-65, 71-72, 75-77, 86-87, 116, 118.)

Had BNYMAS known that this Court intended to construe Banco's misrepresentation claims as a breach of fiduciary duty claim, BNYMAS would have conducted discovery that, for instance, explored the facts relevant to the question of whether BNYMAS had a duty to disclose known details of Sigma's financial condition—one component of this Court's decision to grant summary judgment *sua sponte* against BNYMAS.   As examples, BNYMAS would have explored the following questions in discovery of Banco, including a Federal Rule of Civil Procedure 30(b)(6) deposition:

➢ Whether Banco ever reasonably considered BNYMAS its "fiduciary" in connection with securities lending collateral investments and, if so, during what time periods;

➢ What services or advice Banco believed BNYMAS was going to provide in connection with securities lending collateral investments, both before and after Banco revoked BNYMAS' investment discretion as a securities lending agent;

➢ What obligations, if any, Banco believed BNYMAS had apart from its contractual obligations;

➢ The extent to which Banco relied on BNYMAS to disclose information about Sigma's financial condition, including whether Banco would or could have acted differently if provided the allegedly omitted information;

➢ If BNYMAS owed a fiduciary duty to Banco, the extent to which that fiduciary duty differed from BNYMAS' contractual duty to Banco under the Agreement;

➢ What participation, if any,  BNYMAS had with respect to Banco's decisions to (i) amend its guidelines to prohibit new investments in SIVs; (ii) terminate its participation in the securities lending program; (iii) at the time of termination of the securities lending

program not sell securities at a loss; (iv) not sell the Sigma investment after March 19, 2008;

➢ What information (by type, nature or substance) Banco expected to receive from BNYMAS other than that included in BNYMAS' monthly holdings reports and that provided in response to specific requests or inquiries from Banco;

➢ What knowledge Banco gained about SIVs through other sources, including other investment managers whose portfolios for Banco included SIV investments; and

➢ Banco's relationship with other investment managers whose portfolios for Banco included SIV investments.

Then, in summary judgment briefing and argument, BNYMAS would have come forward with evidence and arguments showing why, for instance, Banco could not meet its burden to adduce evidence showing that BNYMAS owed a fiduciary duty to Banco, especially one independent of its contractual obligations—and, in particular, after Banco revoked the investment discretion BNYMAS had under the SLA. *See* Moore's Fed. Prac., § 56.71[4] ("The party opposing summary judgment is not required to anticipate and respond to potential grounds for summary judgment that were not raised by the movant.") (citing *Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011) and *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765-766 (7th Cir. 2006) ("The party opposing summary judgment has no obligation to address grounds not raised in a motion for summary judgment.")); *Titran*, 893 F.2d at 148 (reversing summary judgment based on grounds not raised by moving party and explaining that "litigation is costly enough without requiring parties to respond to issues that have not been raised on pain of forfeiting their position").

The absence of any notice that this case involved a breach of fiduciary duty is not an idle concern.  The Court failed to determine that the outcome would not have been different if BNYMAS had had the opportunity to fully and fairly defend against a breach of fiduciary duty claim through discovery and summary judgment briefing.

## II.   BNYMAS WAS PREJUDICED BECAUSE IT WAS NOT AFFORDED THE PROTECTIONS REQUIRED UNDER RULE 56(f) AND THE COURT FAILED TO DETERMINE THAT THE OUTCOME WOULD NOT HAVE BEEN DIFFERENT IF IT HAD BEEN

This Court began its analysis of the breach of fiduciary duty claim by noting that while Banco's fraud-based claim "is often referred to a 'fraudulent concealment' claim by New York courts, … it is better characterized as a claim that BNYMAS breached its fiduciary duty to Banco."  (Order at 20.)  But Banco did not plead or move for summary judgment on a breach of fiduciary duty claim.  And, the elements for a cause of action for a breach of fiduciary duty are different from the elements of a cause of action for fraud or negligent misrepresentation—even where a breach of fiduciary duty claim is based on allegations regarding a failure to disclose information.

To establish a claim for misrepresentation based upon an omission, the plaintiff must prove there was a "special relationship" between the parties that imposed a duty upon the defendant to "speak with care."  (Order at 18-19 (citing *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 451 (S.D.N.Y. 2006)).)  By contrast, "a breach of fiduciary duty claim requires a closer relationship than the special relationship necessary for a negligent misrepresentation claim.  Because fiduciary relationships are personal and context-specific, before a court can infer and superimpose a fiduciary duty, the contract and relationship of the parties must be plumbed."  *King Cnty.*, *Wash. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 313-14, *reconsideration denied*, 863 F. Supp. 2d 317 (S.D.N.Y. 2012); *see also Musalli*

*Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 28 (S.D.N.Y. 2009) ("[T]he standard of a special relationship in the context of a negligent misrepresentation claim is less rigorous than that of a fiduciary duty.").

Thus, because fraud and negligent misrepresentation claims are not identical to breach of fiduciary duty claims, Banco's request for summary judgment on the fraud and negligent misrepresentation claims did not put BNYMAS on notice of the possibility that judgment would be entered against it on a breach of fiduciary duty claim.  And, as a result, BNYMAS did not have an opportunity to present evidence and make factual and legal arguments explaining why summary judgment on a fiduciary duty claim was not warranted, especially where the parties' relationship was governed by a detailed contract and where, after March 2008, BNYMAS was stripped of any investment discretion.  Thus, there is no way the Court could have determined, as required by Second Circuit precedent, that "following procedures set out in Rule 56 would not alter the outcome," *Ramsey*, 94 F.3d at 74, had BNYMAS been provided notice and a fair opportunity to be heard.  *Cf. Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991) (district court's *sua sponte* grant of summary judgment in favor of nonmoving party not prejudicial, in part, because court's "*sua sponte* determination [was] based on issues *identical* to those raised by the moving party").

### A.   If BNYMAS Had Been Afforded The Required Notice And Opportunity To Defend Itself On The Duty Element, The Outcome Of The Analysis Would Have Been Different

Under governing New York law, "for a fiduciary relationship to exist, a party must repose confidence in another and reasonably rely on the other's superior expertise or knowledge."  *BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, 866 F. Supp. 2d 257, 270 (S.D.N.Y. 2012) ("New York courts typically focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first.")

(quoting *Scott v. Dime Sav. Bank of N.Y.*, FSB, 866 F. Supp. 1073, 1078 (S.D.N.Y. 1995)). What is even more significant here is that whether a fiduciary relationship exists presents an intensely fact-driven question. *BNP Paribas*, 866 F. Supp. 2d at 270 (S.D.N.Y. 2012) (existence of fiduciary relationship "essentially a factual determination"); *Barnes v. Printron, Inc.*, No. 93 Civ. 5085, 1998 WL 778378, at *9-10 (S.D.N.Y. Nov. 5, 1998) (denying summary judgment on breach of fiduciary duty claim against broker because of a question of fact as to the scope of the broker's duties to its client); *Brock Equities Ltd. v. Josephthal, Lyon & Ross, Inc.*, No. 92 Civ. 8588, 1995 WL 380097, at *11 (S.D.N.Y. June 27, 1995) (the scope of authority assigned to a broker raises factual issue with respect to fiduciary duty, precluding summary judgment).

If this Court had not dismissed the breach of fiduciary duty claim and had Banco not abandoned it, BNYMAS would have conducted discovery on the elements of a fiduciary duty claim—and, in particular, on the question of whether any duty that might have existed by virtue of the SLA continued to exist after Banco revoked BNYMAS' discretion under the SLA, in an amendment dated March 19, 2008. (*See* Def. Ex. 12 at BD001063-64.) Then, at the summary judgment stage, BNYMAS would have explained why Banco was not entitled to entry of summary judgment on that claim.

BNYMAS did not have that opportunity. As explained, this Court had dismissed Banco's breach of fiduciary duty claim, concluding quite emphatically that the SLA did not create a fiduciary relationship:

> THE COURT: There is nothing in this agreement that makes a fiduciary relationship out of anything, is there?
>
> MR. McSHERRY: Yes, your Honor. Pursuant to this agreement, we entrusted approximately $5 billion worth of country's reserves.
>
> THE COURT: That doesn't make a fiduciary relationship.
>
> MR. McSHERRY: For them to hold and invest on our behalf, your Honor.

> THE COURT:  *That doesn't create a fiduciary relationship.   It creates a contractual relationship.*

(Mot. to Dismiss Hr'g Tr. 7:15-25; *see also id.* at 13:12 (referring to Banco's breach of contract claim and stating: "You have one good cause of action, Mr. McSherry.").)

BNYMAS recognizes this Court appears to have reached a different conclusion at the summary judgment stage on whether the parties' contractual relationship could give rise to a fiduciary duty owed by BNYMAS to Banco.[3]   However, the breach of fiduciary duty claim on which this Court entered judgment did not arise out of BNYMAS' investment decisions.   Rather, it arose out of BNYMAS' communications with Banco pursuant to the SLA and largely after Banco had rescinded BNYMAS' investment discretion under the SLA.   Thus, had BNYMAS had notice of a claim based on *this* liability theory, it would have sought discovery, *inter alia*, related to Banco's decision to suspend its participation in the securities lending program and to strip BNYMAS of all discretion over its investments.   BYNMAS specifically would have directed its discovery efforts toward establishing that Banco no longer "reposed trust in BNYMAS" after that point in time and then would have presented summary judgment evidence showing that there were genuine issues of material fact.[4]   To be sure, this Court concluded in its summary judgment Order that "the fiduciary relationship did not end when Banco … advised

---

[3]  Order at 21-22 ("[T]he parties' Agreement provided that BNYMAS was to act as Banco['s] … agent for investments.  BNYMAS had broad discretion as to where to invest Banco['s] funds, including the cash collateral deposited with BNYMAS by borrowers of the securities that the bank held.").

[4]  *See Indep. Order of Forresters v. Donald, Lufkin, Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998) (a fiduciary duty "can arise only where the customer has delegated discretionary trading authority…."); *In re Refco Securities Lit.*, 759 F. Supp. 2d 301, 323 (S.D.N.Y. 2010) ("New York courts have developed case law specific to the broker-customer relationship that helps to clarify the scope and nature of fiduciary duties in this context," which holds that "the broker's fiduciary obligation … is limited to affairs entrusted to the broker") (quoting *Bissell v. Merrill Lynch & Co.*, 937 F. Supp. 237, 246 (S.D.N.Y. 1996)); Order at 21 (no fiduciary duty if bank does not "control" its client's investment).

BNYMAS that, as of March 19, 2008, the securities lending was suspended and 'new loans are to be ceased.'" (Order at 22.) But, for the purposes of this reconsideration motion, the pertinent point is that, because BNYMAS had every reason to believe that a breach of fiduciary duty claim was no longer part of the case, it did not explore in discovery what Banco expected of BNYMAS independent of their contractual relationship and what it expected as of March 19, 2008 after it stripped BNMYAS of investment discretion. Nor did BNYMAS have any notice that it needed to present evidence and make arguments at the summary judgment stage showing why, as of the spring of 2008, the parties' relationship fundamentally changed, what BNYMAS understood about its duties to Banco at that time, and why, based on the evidence, Banco was not entitled to entry of judgment in its favor on a breach of fiduciary duty claim.

Had BNYMAS known that the Court was considering granting summary judgment to Banco on an un-pled breach of fiduciary duty claim, BNYMAS would also have invoked the applicable case law (which this Court overlooked because it was not presented to it), precluding claims for breach of fiduciary duty when the claimed duties arise from, and are encompassed within, a contractual relationship, as is the case here. Under that law, a contracting party cannot assert a breach of fiduciary duty claim unless "***apart from the terms of the contract***, the parties created ***a relationship of higher trust*** than would arise from their contracts alone, so as to permit a cause of action for breach of a fiduciary duty independent of the contractual duties." *Balta v. Ayco.*, *LP*, 626 F. Supp. 2d 347, 360-61 (W.D.N.Y. 2009); *see also Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 195-96 (S.D.N.Y. 2011) (dismissing claim for breach of fiduciary duty "[b]ecause any fiduciary duty here would be derived directly and exclusively from [Defendant's] contractual relationship with [P]laintiffs"); *Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Pub. Co.*, 580 F. Supp. 2d 285, 294-95 (S.D.N.Y. 2008)

("Where a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract."); *Brooks v. Key Trust Co. Nat. Ass'n*, 809 N.Y.S.2d 270, 272-73 (N.Y. App. Div. 2006) ("[P]laintiff has not set[ ] forth allegations that, *apart from the terms of the contract*, the parties created a relationship of higher trust than would arise from [their contracts] alone, so as to permit a cause of action for breach of a fiduciary duty independent of the contractual duties.").   This Court's Order also overlooks the fact that, in dismissing Banco's breach of fiduciary duty claim, this Court **already held** that the SLA did not give rise to a fiduciary duty on the part of BNYMAS.   (Mot. to Dismiss Hr'g Tr. 7:15-25; *see also id.* at 13:12.)

As the New York Court of Appeals recognized in a decision cited by this Court in the Order, "[i]f the parties [to a contract] … do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of [fiduciary] relationship and fashion the stricter duty for them."  *EBC I, Inc. v. Goldman, Sachs & Co*., 5 N.Y.3d 11, 20 (N.Y. 2005).  *EBC I* illustrates the circumstance—not present or even pled here—where a "limited" fiduciary relationship can arise independent of a contractual relationship.  There, plaintiff entered into an underwriting agreement with Goldman Sachs in connection with an IPO.  Plaintiff alleged that it and Goldman Sachs also had "an advisory relationship that was independent of the underwriting agreement," *id*. at 20, and that Goldman Sachs breached its duties in connection with that separate advisory relationship.  The court allowed the fiduciary duty claim because the advisory relationship was independent of the underwriting agreement. *Id*. at 21.  Here, the only relationship between BNYMAS and Banco is defined by the SLA; there was no other relationship, much less one that was "independent" of the SLA or that imposed a "higher trust" than did the SLA, whether before or after the SLA was amended in March of 2008 to revoke

BNYMAS' investment discretion.  Accordingly, there is no basis for a breach of fiduciary duty claim because such a claim would have "derived directly and exclusively from [BNYMAS'] contractual relationship with [P]laintiffs…."  *Ellington Credit Fund*, *Ltd.*, 837 F. Supp. 2d at 195-96.[5]

### B.   On The Breach Element, There Are Genuine Issues Material Fact Precluding Summary Judgment In Banco's Favor

Although this Court correctly concluded that BNYMAS did not have to disclose opinions, it found that BNYMAS failed to inform Banco of Sigma's financial problems and "[t]he fact that SFC could not obtain funding."  (Order at 23.)  Specifically, this Court found that, on January 31, 2008, a BNYMAS employee emailed a colleague and referenced "the difficulty [SFC] is currently experiencing in funding itself" and that BNYMAS did not share that information with Banco.  (*See* Order at 23 (citing Pl. Ex. 37).)  This Court also found that, on April 2, 2008, Sigma told BNYMAS "things are getting worse for them" and "[t]hey cannot access funding, and maturities continue to drain liquidity" and that BNYMAS did not share that information with Banco.  (*See* Order at 23 (citing Pl. Ex. 48).)  But there was contrary record evidence precluding summary judgment.

Even without notice of a breach of fiduciary duty claim, evidence BNYMAS otherwise obtained in discovery and presented on summary judgment creates a genuine issue of material fact regarding whether BNYMAS failed to disclose information to Banco.[6]  More specifically,

---

[5]  Because there is no basis for imposing a fiduciary duty on BNYMAS, there is also no basis for finding it provided preferential treatment to other clients at the expense of Banco.

[6]  On summary judgment, a district court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).  Further, Rule 56 makes no distinction between jury trials and bench trials.  Thus, summary judgment standards—including the requirement that the non-moving party be granted a full evidentiary hearing as to all genuine

there was evidence that in the midst of the 2008 financial crisis and in the context of the resulting widespread, public concerns about Sigma's continued viability, BNYMAS repeatedly informed Banco that, due to market illiquidity, Sigma had to sell assets, engage in "asset swaps," and borrow from repo lenders in order to fund itself.  And there also was evidence that Banco knew about Sigma's funding difficulties from information prominently featured in contemporaneous analyst reports that Banco's senior officers reviewed at the time.  This Court, however, overlooked this evidence that created a genuine issue of material fact on whether BNYMAS breached the fiduciary duty this Court found that BNYMAS owed to Banco.

      1.      **BNYMAS Adduced Evidence Showing That It Disclosed Sigma's Funding Difficulties**

BNYMAS adduced evidence showing that it repeatedly informed Banco that Sigma needed to fund itself through repos, assets sales, and ratio trades, none of which are routine funding mechanisms.  For example, in an April 8, 2008 email, Stuart Skeel, BNYMAS' relationship manager for Banco, told Banco that Sigma had managed to continue to pay its obligations through "a strategy which included the out-right sale of underlying assets in excess of US$9bn."  (Pl. Ex. 51.)  Skeel said Sigma did so in order to contend with this "difficult period in the market."  *Id.*  Similarly, on May 16, 2008, Skeel sent Banco a one-page document prepared by the staff at BNY Mellon, stating:  "Analysis by Moody's, which downgraded SIGMA by five notches from AAA to A2, shows the vehicle has sold off $9.5bn of assets in the open markets to repay debt, while persuading some note holders to take about $4bn of underlying assets in lieu of repayment. ... At the same time, SIGMA has been working its banking contracts to arrange as much funding as possible in the form of repurchase, or repo, agreements, raising about $14bn

---

issues of material fact—apply with equal force regardless of whether the ultimate fact-finder will be the judge at a bench trial.  *United States v. JB Williams Co., Inc.*, 498 F. 2d 414, 430 n.19 (2d Cir. 1974).

from 17 different lenders."  (May 16, 2008 email from Stuart Skeel to Ricardo Pedraza, forwarded to Risk Department at Banco, at B_0007444, attached hereto as Exhibit A.)[7] BNYMAS also informed Banco of other negative developments at Sigma.  For example, in a July 28, 2008 email, George Davy wrote Banco that Sigma had paid its July maturities through repos and ratio trades and said:  "*While helpful to [Sigma], these types of swap transactions have evidently slowed down to a trickle*."  (Pl. Ex. 63.)  That amounted to a clear disclosure that Sigma was having trouble obtaining funding to pay its obligations.

These communications are important as they indicated that Sigma's business model was under stress and that Sigma was being forced to sell and borrow in order to meet its maturity obligations—and the consequences of that were plain to a sophisticated investor like Banco.[8] Although BNYMAS may not have specifically prefaced its communications with Banco with the words "Sigma is having difficulty funding itself," that was the clear import of BNYMAS' communications describing Sigma's survival efforts.

The notion that BNYMAS kept Banco in the dark about Sigma's financial condition is refuted by other facts.  Responding to Banco's request for a status report on Sigma, BNYMAS sent Banco detailed monthly financial reports issued by Sigma, which were surely the most extensive financial picture of Sigma that Banco could have hoped to receive from any source. Those reports disclosed, among other things, the amount of Sigma's outstanding debt, when that debt was due, the value and ratings of Sigma's assets, Sigma's total committed liquidity, and the

---

[7]   The May 16, 2008 document, which is supportive of but not essential to BNYMAS' reconsideration motion, is not part of the summary judgment record.  Because BNYMAS was prejudiced by the Court's *sua sponte* revival of Banco's dismissed and abandoned breach of fiduciary duty claim, and because the document is relevant to the Court's Order on the un-pled claim, we attach it to this motion as Exhibit A.

[8]  This Court found that both BNYMAS and Banco were "sophisticated" parties.  (Order at 13.)

results of Sigma's capital adequacy tests.   (*See* Pl. Ex. 60 at B_0007420 (circulating email transmitting April 30, 2008 report but not attaching the report);[9] Def. Ex. 20 at B_0007402- 12 (May 30, 2008 report); Pl. Ex. 65 (stating Sigma's July business report was provided to Banco).) All of these reports, which disclosed Sigma's financial condition in intimate detail, were circulated amongst Banco's entire risk management team.   To a sophisticated party like Banco, these reports painted a clear picture of Sigma's financial condition, and along with the publicly available analyst reports on Sigma, several of which Banco circulated internally, *see infra* §II.B.2, were the best and most reliable source of information regarding Sigma.

In an amendment dated March 19, 2008, the parties agreed, in language proposed by Banco and countersigned by BNYMAS, to amend the SLA as follows:

> Outstanding investments of cash Collateral with a final maturity over 60 days are to be sold immediately by Agent unless Lender incurs in any financial loss. *Otherwise Agent must deliver to Lender on a weekly basis, indicative market prices* of the unsold securities with maturities of over 60 days *for Lender to determine the best course of action, which will be notified to Agent for Agent to comply with*.

(*See* Def. Ex. 12 at BD001063-64.)   BNYMAS satisfied its obligations under this amendment by regularly providing Banco with pricing information on Sigma's notes, which showed the market's assessment of Sigma, as its fortunes waxed and waned.[10]   Notably, Banco's amendment withdrew BNYMAS' investment discretion and sought from BNYMAS only pricing information regarding Sigma.

Shortly after the internal BNYMAS email cited by this Court in the Order, stating a Sigma employee had told BNYMAS that "things are getting worse" for Sigma, BNYMAS

---

[9]  The report itself is included in Exhibit A at pages B_0007437-43.

[10]  There is no allegation that the pricing information was inaccurate and, in fact, the Court found that BNYMAS had not made any actionable factual misrepresentations to Banco.  (Order at 20.)

informed Banco that Sigma's notes were trading at about 70 cents on the dollar, or 30 percent under par, (Pl. Ex. 63 at BNYM-BC-00422554; Def. Opp. Ex. 15 at B_0023869), a market drop which constitutes crystal clear evidence that "things [were] getting worse" for Sigma. Another fact further contradicting any notion that Banco was unaware of Sigma's financial difficulties is that Banco itself monitored Sigma's market price, for example, noting in an internal June 23, 2008 email, that Sigma "prices continue to be very low." (Def. Reply Ex. 9.)

2.      **BNYMAS Adduced Evidence Showing That Sigma's Financial Difficulties Were Otherwise Widely Publicized And Known To Banco**

There also is evidence that the information this Court found that BNYMAS did not disclose to Banco was public information readily available to and accessed by Banco, such as the numerous, detailed credit ratings agency reports that were the subject of discussions between BNYMAS and Banco and among Banco's senior officers. Sigma's difficulty in obtaining funding was already the subject of widely-publicized reports as early as 2007, including those cited in Banco's Third Amended Complaint. (*See, e.g.*, D.E. 21 at ¶43 (ratings agency terminated agreement with Sigma due to "concerns over the long-term viability of [Sigma's] funding strategy").)

On April 4, 2008—just two days before the date on which this Court found that BNYMAS did not disclose to Banco that "things are getting worse" for Sigma—Moody's cut Sigma's credit rating *by five levels* from Aaa to A2. Because Banco itself was monitoring Sigma, it learned of the downgrade and quickly contacted BNYMAS. In addition to the obvious fact that a credit rating downgrade can be indicative of problems for an investment, the Moody's piece noted:

- "continuing uncertainties surrounding [Sigma's] ability to absorb the heightened and unprecedented levels of stress in the credit markets";

- "further deterioration in [Sigma's] asset prices";

- "*[s]evere disruption in the new debt issuance market for commercial paper*, medium term and capital notes caused [Sigma] to rely instead on repurchase agreements, ratio trades and outright assets sales in order to repay its maturing debt."

(Def. Opp. Ex. 11 at B_0023806.)

On April 7, 2008, Banco circulated a release announcing that Standard & Poor's had lowered Sigma's credit ratings; the release noted that Sigma was engaged in repo loans and faced funding challenges. (Def. Opp. Ex. 12 at B_0023804.) The next day, April 8, the head of Banco's international reserves department circulated an article from Bloomberg concerning Sigma that quoted an analyst that "[Sigma] is the foremost concern among money-market funds right now." (*Id.*) The Court's Order, however, did not account for this evidence of Banco's real time knowledge of Sigma's financial difficulties.

Any assertion that BNYMAS kept Banco in the dark about Sigma's financial difficulties is called into question by the evidence regarding Banco's significant and loudly stated concerns about SIVs like Sigma. As early as January 2008, Banco was well aware that SIVs, including Sigma, were having financial difficulties. (Def. Ex. 12 at BD001058-62; Def. Ex. 6 (Ruiz 30(b)(6) Dep. 133:4-25).) Indeed, "because of those problems, in January 2008 [Banco] amended its guidelines to prohibit the purchase of securities issued or backed by SIVs." (Def. Ex. 6 (Ruiz 30(b)(6) Dep. 133:12-22); *see also* Def. Ex. 12, § 3.4.1 at BD001060 ("It is not permitted to purchase securities issued or backed by Structured Investment Vehicles (SIVs).").) Banco's amendment to the guidelines resulted from "a fear the [SIV] issuers would default." (Def. Ex. 6 (Ruiz 30(b)(6) Dep. 135:14-21).) It was Banco's view "that the risks of default with SIVs had so increased by January 24th of 2008 that [Banco] was no longer willing to invest in [them]." (*Id.* at 135:25-136:6.)

There was other evidence showing not only that Banco was acutely aware of the financial troubles plaguing SIVs like Sigma, but also that it knew those troubles were the result of a liquidity crisis affecting SIVs in general, and Sigma in particular.  For instance, when Banco decided on January 24, 2008 to prohibit new investments in "SIVs and SIV-backed paper," it did so because "they lack liquidity," or, in other words, the ability to fund themselves.  (Def. Opp. Ex. 7 at B_0017132-33; *see also* Pl. Ex. 4 (Ruiz 30(b)(6) Dep. 149:4-12 (testimony on liquidity issues)).)  Banco chose to terminate its participation in the securities lending program in mid-March of 2008 because, as it stated in a March 17, 2008 email to Skeel:  "current market conditions have increased the risk exposure of the securities lending program, specifically regarding credit and liquidity risk, beyond what our Board considers as 'tolerable,' and as such, they have instructed me to inform you that the program is to be terminated."  (Pl. Ex. 33.)

This Court's finding that Banco was not informed about the difficulties facing Sigma is undermined by this evidence of Banco's determination that SIVs presented an unacceptable investment risk, in particular because of their lack of liquidity.  Moreover, what BNYMAS did tell Banco must be viewed in the context of all the information Banco already had concerning the situation and all permissible inferences concerning those communications drawn in favor of BNYMAS.

### C.    On The Reliance/Causation Element, There Are Genuine Issues Of Material Fact Precluding Summary Judgment In Banco's Favor

This Court also overlooked evidence creating genuine issues of material fact on the reliance and causation elements that would preclude summary judgment on a breach of fiduciary duty claim.

"[E]ven where there is a fiduciary relationship, a plaintiff with such a claim must establish justifiable reliance on the misrepresentations or omissions at issue.  So, if he was aware

of information that rendered his reliance unreasonable, or if he had enough information to create a duty to investigate further, the requisite reliance cannot be established." *Littman v. Magee*, 860 N.Y.S.2d 24, 27 (N.Y. App. Div. 2008), *abrogated on other grounds by Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 952 N.E.2d 995 (N.Y. 2011). What's more, because causation and reliance are highly fact-intensive inquiries, the Second Circuit has repeatedly explained that these questions ordinarily should *not* be disposed of at the summary judgment stage. *See, e.g.*, *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 327-28 (2d Cir. 2011) ("But-for causation is an issue of fact for the jury, not ... a matter to be decided by the court on a motion for summary judgment.") (internal citations omitted); *Gordon & Co. v. Ross*, 84 F.3d 542, 545 (2d. Cir. 1996) (in fraud action, question of reliance was a question of fact to be determined by the jury); *Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 89 F. App'x 287, 295 (2d Cir. 2004) (questions of actual and justifiable reliance on alleged omission were ones of fact for the jury). *See also Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989) (holding that causation was a question of fact for the jury).

Here, BNYMAS adduced evidence raising a triable issue of fact regarding whether Banco relied on any omission of BNYMAS because the evidence establishes not only that the information at issue was actually provided to Banco, *see supra* § II.B.1, but that the information also was publicly available in analysts' reports that were circulated among senior officials at Banco. (*See* Def. Opp. Exs. 11 (Moody's), 12 (S&P), and 13 (Bloomberg).) As noted above, Moody's April 4, 2008 report notes that Sigma was not able to continue to fund itself using its "pre-crisis business model" and states "*[s]evere disruption in the new debt issuance market for commercial paper*, medium term and capital notes caused Sigma to rely instead on repurchase agreements, ratio trades and outright assets sales in order to repay its maturing debt." (Def. Opp.

Ex. 11 at B_0023806.)  The report also noted the uncertainties facing Sigma as a result of its continued reliance on unorthodox means of raising money, stating "heavy reliance on repos going forward accompanied by shorter maturities *represent a real risk for Sigma*."  (*Id.* at B_0023807.)  Similarly, S&P stated on April 7 that "we lowered our long-term ratings on Sigma to reflect *the long-term risk of continued funding challenges* once the existing repos mature and the challenges in the funding markets that may increase the long-term risks and decrease Sigma's financial flexibility."  (Def. Opp. Ex. 12 at B_0023804.)  And Bloomberg wrote on April 8 of "concern about Sigma's ability to weather the credit crunch" and said its founders "are *fighting for survival of their flagship fund*."  (Def. Opp. Ex. 13 at B_0016426.)

Thus, there was evidence showing that the allegedly undisclosed information was not only readily available to Banco, but was actually known by Banco.  This evidence, in turn, created a triable issue of fact as to whether Banco reasonably relied on BNYMAS' alleged non-disclosure.  *See Ashland Inc. v. Morgan Stanley & Co., Inc.*, 652 F.3d 333, 339 (2d Cir. 2011) (dismissing breach of fiduciary claim because sophisticated investors could not plead reasonable reliance on defendant's alleged misrepresentations in light of defendant's publicly-filed statement explicitly disclosing the very liquidity risks about which investors claim to have been misled); *Carr v. Neilson*, 909 N.Y.S.2d 387 (N.Y. App. Div. 2010) ("Any reliance by the plaintiff upon alleged misrepresentations made by the defendants that they were litigating on her behalf was not reasonable as a matter of law.  It was a matter of public record, as well as readily ascertainable by reference to the complaint sent to the plaintiff and her attorney, who the parties to the main action were.").

## CONCLUSION

BNYMAS recognizes that a high hurdle must be cleared before a motion for reconsideration may be granted under Local Rule 6.3, but this is one of the rare circumstances

where reconsideration is warranted. Summary judgment was entered *sua sponte* against BNYMAS on a breach of fiduciary duty claim that was dismissed and, therefore not part of this litigation. The outcome would have been different if BNYMAS had notice of the claim and that this Court was considering entering summary judgment on it. BNYMAS, therefore, asks only that it be given an opportunity to fully and fairly address this claim through discovery and briefing.

Dated:  August 23, 2013                          Respectfully submitted,

Jonathan D. Schiller
JSchiller@BSFLLP.com
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel.: 212-446-2300
Fax: 212-446-2350

/s/ Robin A. Henry
Robin A. Henry
RHenry@BSFLLP.com
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Tel.: 914-749-8200
Fax: 914-749-8300

Carlos M. Sires
CSires@BSFLLP.com
Carl E. Goldfarb
CGoldfarb@BSFLLP.com
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Tel.: 954-356-0011
Fax: 954-356-0022

*Attorneys for Defendants The Bank of New York Mellon, BNY Mellon, N.A., and BNY Mellon Asset Servicing, B.V.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2013, I electronically transmitted the foregoing Memorandum Of Law In Support Of Motion For Reconsideration to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to Plaintiff through its counsel:

William J. McSherry, Jr.
wmcsherry@crowell.com
CROWELL & MORING
590 Madison Avenue, 20th Floor
New York, NY  10022

/s/ Robin A. Henry